ADDIE COVEY v. MARSHALL ROGERS.

November Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed January 16, 1911.

*Evidence—Private Memoranda—Availability as Evidence—Offers
—Construction—Contract for Services—Brother and Sister—
Sufficiency of Evidence.*

Offers and statements under which certain memorandum books were
received in evidence considered, and *held* that the books were offered
and received as independent evidence.

Entries in a diary on pages having the printed heading "Cash Account",
and in blank books, all in columns under the respective headings
"Received" and "Paid", but which contain nothing to connect any
one with the transactions, and are meaningless until explained by
the person who made them, are mere private memoranda, available
in aid of recollection, but not as independent evidence.

Whether there was a mutual understanding between sister and brother
that she should have a reasonable compensation for services that she
rendered him *held*, under the evidence, for the jury.

GENERAL ASSUMPSIT. Plea, the general issue. Trial by
jury at March Term, 1910, Chittenden County, *Stanton, J.,*
presiding. At the close of all the evidence, the defendant moved
for a directed verdict in his favor. Motion overruled. Verdict
for plaintiff, and judgment thereon. The defendant excepted.
The opinion states the case.

*R. E. Brown* and *V. A. Bullard* for the defendant.

The admission of the memorandum books as independent
evidence was error. *Freehart* v. *Stanford's Est.*, 77 Vt. 36; *Post*
v. *Kenerson*, 72 Vt. 341; *Cross* v. *Bartholomew*, 42 Vt. 206;
*Godding* v. *Orcutt*, 44 Vt. 54; *Laphan* v. *Kelley*, 35 Vt. 195;
*Barnes* v. *Dow*, 59 Vt. 530.

*C. S. Palmer* for the plaintiff.

MUNSON, J. The plaintiff testified regarding the matters of debt and credit between herself and the defendant without referring to any books, and at the close of her direct testimony was asked if she kept an account of what she had received, and replied that she did. Her counsel then produced three books, and asked if they were the books showing the entries to which she had testified, and she identified them as such. Counsel then offered the books in evidence "in connection with her testimony." Objection being made that they were not proper books of account, counsel added, "They are offered as memoranda —original memoranda in the books such as they are." It was then objected further that they did not purport to be memoranda of any transactions with the defendant, and that they were not used by the witness as memoranda to refresh her recollection in testifying. Upon this the court inquired of plaintiff's counsel, "Then why do you need the books?" and counsel replied, "Because they are evidence;" if she keeps the entries "it is evidence of their understanding as to the agreement; it is original evidence for that purpose, and with reference to her testimony." The court thereupon received the books, and in taking an exception defendant's counsel said, "I understand they are offered as evidence in chief." To this plaintiff's counsel made no reply. Upon this statement, we think it must be considered that the books were offered and received as independent evidence.

The first exhibit is contained in a diary, on pages having the printed heading "cash account." The other exhibits are in blank memorandum books. In all of them the amounts are entered in columns under the headings "received" and "paid." The entries are not in the ordinary form of book account entries. The items are without the usual signs of debit and credit. There is nothing to connect the defendant with the transactions represented. For anything that appears the several items may represent transactions with as many different persons. Considered as anything more than a cash account, the entries are meaningless until explained by the testimony of the person who made them. They must be regarded as mere private memoranda, available in aid of the recollection and as confirmatory of the testimony given, but not entitled to use as direct evidence against the party sought to be charged.

The defendant moved for the direction of a verdict on the ground that there was no evidence tending to show either an express promise or a mutual expectation of payment. The mother of the parties died about 1895, and the father in 1901. Both the parties had always lived with their parents, except that the plaintiff had worked out some when a girl. After the father's death the defendant bought the shares of the other heirs, and continued to live on the farm, the plaintiff living with him as his housekeeper and doing all the housework. The plaintiff had filled this place in the family since the mother's death, and had received from her father as wages a specific sum each year, and had in addition the money received from the neighborhood sales of eggs, milk, butter and the like. She remained with her brother until her marriage in 1907, and during this time received from him various sums of money, and had the avails of the sales above mentioned. She had no other income.

The plaintiff testified that soon after the defendant got his deeds she had a talk with him about staying there, in which she told him that she could not afford to stay there for nothing —that she must have some pay, and that he replied that he could not afford to pay her—that if he paid her he could not run the farm, and would have to sell it or give it away; that on another occasion she asked him for some money and he did not give her as much as she thought she ought to have, and that she told him she did not think she was having much for her services, and that he said perhaps he could give her more later but that he was a little short then. Defendant testified that the payments he made to the plaintiff were presents, and were made because she was there doing the work; and when inquired of as to what brought up the second conversation, said she thought he wasn't giving her pay enough—that she was not getting enough. Plaintiff testified that she did not talk with her brother when she left about the balance due her, and that this was because her brother was angry with her for getting married and leaving and had threatened to take measures to prevent the marriage. This was not contradicted by the defendant. We think there was evidence from which the jury could find that there was a mutual expectation that the plaintiff

should have reasonable compensation for her services, and that defendant's motion for a verdict was properly overruled.

*Judgment reversed and cause remanded.*